1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10    J & J SPORTS PRODUCTIONS, INC.,

11              Plaintiff,              No. 2:10-cv-03009 KJM KJN PS

12        v.

13    ARMANDO RIOS TORRES,
      Individually and d/b/a CAVOUR CLUB,
14
                Defendant.              ORDER and FINDINGS AND
15                                       RECOMMENDATIONS
      _____/
16

17            Presently before the court in this satellite and cable signal piracy case is plaintiff's

18    motion for partial summary judgment (Dkt. No. 33).[1]  Plaintiff seeks summary judgment

19    regarding defendant's liability as to plaintiff's claims seeking relief for: (1) an alleged violation

20    of 47 U.S.C. § 553; (2) an alleged violation of 47 U.S.C. § 605; and (3) the tort of conversion

21    under California law.[2]

22            Attorney Gary Decker specially appeared on behalf of plaintiff's counsel of

23

24            [1]  This action proceeds before the undersigned pursuant to Eastern District of California
      Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

25            [2]  Plaintiff does not seek summary judgment as to its claim that defendant violated California
      Business and Professions Code § 17200.  Plaintiff also does not seek summary judgment as to the
26    question of damages.

                                                  1

1  record, Thomas P. Riley.[3]  Defendant, who is proceeding without counsel, appeared and

2  represented himself.

3         Plaintiff's motion almost entirely relies on its requests for admission to defendant

4  that it contends were deemed admitted by defendant's failure to answer.  In opposing the motion

5  for partial summary judgment, defendant now seeks relief from the deemed admissions pursuant

6  to Federal Rule of Civil Procedure 36(b).  Despite defendant's failure to notice his request for a

7  separate hearing, the undersigned has considered defendant's request.  Plaintiff did not file a

8  reply brief in support of its motion for partial summary judgment, which might have responded to

9  defendant's request for relief from the deemed admissions.  However, plaintiff filed an

10  opposition to defendant's requested relief late on February 29, 2012, and the undersigned has

11  considered that opposition in fairness to plaintiff (Dkt. No. 37).  Upon review of the parties'

12  briefs, oral arguments, and appropriate portions of the record, the undersigned grants defendant's

13  request for relief from his deemed admissions.  At the hearing, the undersigned ordered

14  defendant to serve amended responses to plaintiff's requests for admission no later than March 2,

15  2012.

16         Plaintiff argues that even assuming the court does not rely on the deemed

17  admissions, plaintiff is entitled to partial summary judgment based on the evidence in the record.

18  Plaintiff's argument is not well-taken because defendant has presented sworn affidavits and

19  declarations that raise a genuine dispute of material fact concerning whether the alleged pirating

20  of a satellite or cable signal actually occurred.  Defendant also raises a genuine dispute regarding

21  the credibility of the representations of plaintiff's private investigator, Jessica Haverty, regarding

22  ////

23  ////

24

25     [3] Mr. Decker's appearance was refreshing, as it readily appears that Mr. Decker has faithfully
embraced his role as an officer of the court.  Although Mr. Decker argued plaintiff's motion, his

26  arguments and representations to the court were forthcoming and not over-reaching.

1   the alleged signal piracy.[4]  Plaintiff failed to rebut or resolve these genuine disputes in a reply

2   brief or at the hearing.  Accordingly, the undersigned recommends that plaintiff's motion for

3   partial summary judgment be denied.  However, such denial should be without prejudice because

4   the court's grant of relief in regards to defendant's deemed admissions warrants the reopening of

5   discovery considering that such relief was requested and granted after the close of discovery.[5]  As

6   a result, the undersigned modifies the scheduling order in this case to permit the parties to

7   conduct additional discovery and re-file dispositive motions.

8   I.      BACKGROUND

9           Relevant here, plaintiff's complaint alleges that defendant is liable for violations

10  of 47 U.S.C. §§ 553 and 605, and the tort of conversion under California law.  (See Compl. at 3-

11  7.)  All of plaintiff's claims arise from defendant's alleged unauthorized interception and

12  broadcast of a closed-circuit feed of a boxing match entitled "'*Firepower': Manny Pacquiao v.

13  Miguel Cotto, WBO Welterweight Championship Fight Program*" ("Program"), to which plaintiff

14  allegedly held the exclusive commercial domestic distribution rights.  (See Compl. ¶¶ 3, 9, 12,

15  19-20, 24.)

16          It is undisputed that plaintiff is a distributor of sporting event programming and

17  distributes such programming by means of "pay-per-view" broadcasts.  (Gagliardi Aff. ¶ 3, Dkt.

18  No. 33, Doc. No. 33-4.)  It is also undisputed that plaintiff "was granted the exclusive

19  commercial distribution rights to the Program," which was broadcast nationwide on Saturday,

20  November 14, 2009.  (Pl.'s Statement of Undisputed Facts, Fact No. 1, Dkt. No. 33, Doc. No. 33-

21  1; Gagfliardi Aff. ¶ 3.)  Defendant does not dispute that the Program "included the main event

22

23          [4]  Defendant filed what amounts to evidentiary objections to the affidavit of Jessica Haverty
24  that are legally and factually meritless and do not impact the undersigned's analysis.  However, the
    undersigned has considered defendant's factual arguments based on evidence that call into question
    the credibility of Haverty's affidavit.

25
26          [5]  Discovery in this matter had to be "completed" no later than January 13, 2012.  (Status
    (Pretrial Scheduling) Order at 3-4, Dkt. No. 27.)

1   between Pacquiao and Cotto, as well as all undercard bouts, including the fight between Julio

2   Cesar Chavez Jr. vs. [*sic*] Troy Rowland." (Gagfliardi Aff. ¶ 3.)  It is undisputed that because of

3   plaintiff's acquisition of the exclusive commercial distribution rights to the Program, commercial

4   establishments such as bars and restaurants were required to pay a licensing fee, calculated on the

5   basis of seating capacity, in order to publicly broadcast the Program in their establishments.  (See

6   id. ¶¶ 4-5.)

7          In regards to defendant, the parties do not dispute that defendant owns the

8   commercial establishment called the "Cavour Club," located at 302 South Union Street,

9   Stockton, California 95207, where the alleged interception and broadcast occurred.  (See

10  Armando Torres Decl. ("A. Torres Decl.") at 2-3, Dkt. No. 36.)  It is further undisputed that

11  defendant did not pay a commercial license fee to plaintiff and was thus not authorized to

12  broadcast the Program.  (See Gagliardi Aff. ¶ 6; see also Def.'s Revised Answers to Pl.'s Req.

13  for Admission at 2, attached as Ex. 5 to A. Torres Decl.)

14         The parties greatly dispute several key facts, as discussed below.  The parties

15  primarily dispute whether defendant actually intercepted a satellite or cable feed of the Program

16  on the night in question, and the parties have submitted conflicting evidence in that regard.  The

17  competing evidence is discussed in detail below.  Before turning to the disputed evidence,

18  however, the undersigned must address whether plaintiff is entitled to rely on defendant's

19  deemed admissions in moving for summary judgment.

20  II.   DEFENDANT'S REQUEST FOR RELIEF FROM DEEMED ADMISSIONS

21         In its motion for partial summary judgment, plaintiff contends that it served

22  requests for admission on defendant on September 7, 2011, and that defendant had not responded

23  to plaintiff's requests for admission as of the date plaintiff filed its motion for partial summary

24  judgment.  (Pl.'s Memo. of P. & A. in Supp. of Mot. for Partial Summ. J ("Pl.'s Memo.") at 6-7,

25  Dkt. No. 33; see also Riley Decl. ¶¶ 3-4 & Ex. A, Dkt. No. 33, Doc. No. 33-2.)  Upon review of

26  the requests for admission, it is readily apparent that defendant would essentially concede

4

1   liability in this case if he is deemed to have admitted all the matters addressed in the requests for

2   admission.  As noted by plaintiff, "[u]nanswered requests for admissions may be relied on as the

3   basis for granting summary judgment."  <u>Conlon v. United States</u>, 474 F.3d 616, 621 (9th Cir.

4   2007).

5              In opposing plaintiff's motion, defendant seeks relief from the deemed admissions

6   on the grounds that the presentation of the merits of this case would be subserved by allowing the

7   deemed admissions to stand.  Defendant admits that he possessed plaintiff's requests for

8   admission as of September 14, 2011.  (Def.'s Opp'n to Mot. for Partial Summ. J. ("Def.'s

9   Opp'n") at 6, Dkt. No. 36.)  He argues, however, that on October 7, 2011, he filed a motion for

10  an extension of time to respond to discovery (Dkt. No. 29).  The court construed defendant's ex

11  parte motion as seeking a protective order, but denied the motion without prejudice because

12  defendant: (1) did not notice the motion for a hearing date, and (2) had not indicated whether he

13  and plaintiff's counsel had met and conferred about the discovery dispute, which is required prior

14  to seeking a protective order.[6]  (<u>See</u> Order, Oct. 17, 2011, Dkt. No. 30.)  Defendant never re-filed

15  his motion.

16             In his written opposition, defendant represents that he did not re-file the motion

17  for an extension of time because he had spoken with plaintiff's employee named "Ines" or

18  "Maria," who agreed to an extension of time.  (Def.'s Memo. at 7.)  This statement is not

19  supported by a declaration under penalty of perjury or sworn affidavit, and defendant did not

20  explain the nature of the extension.  At the hearing, defendant conceded that his opposition

21  contained a material misrepresentation.  After refusing to file a declaration under penalty of

22  perjury or take the stand during the hearing to support his statement regarding the purported

23  extension of time under oath, defendant attempted to argue that his wife actually called plaintiff's

24

---

25      [6]  Federal Rule of Civil Procedure 26(c)(1) provides that a motion for a protective order
    "must include a certification that the movant has in good faith conferred or attempted to confer with
26  other affected parties in an effort to resolve the dispute without court action."

1  counsel's office to seek the extension.  When the undersigned asked whether defendant's wife

2  would provide a declaration under penalty of perjury regarding her request for the extension,

3  defendant conceded that his wife told him, purportedly after defendant filed his written

4  opposition, that she never actually called plaintiff's counsel's attorney to seek an extension of

5  time.  The undersigned warned defendant of the very serious consequences that could result from

6  his or his wife's misrepresentations to the court or to plaintiff in discovery responses.  Defendant

7  represented on the record that the remainder of his representations are truthful.

8          Nevertheless, and despite defendant's blatant lie to the court, the undersigned has

9  considered whether defendant is entitled to relief from the deemed admissions under the

10  applicable standard because of the presumption in favor of hearing cases on the merits.

11  Moreover, apart from defendant's lie, defendant submitted revised responses to plaintiff's

12  requests for admission with his opposition to the motion for summary judgment and seeks relief

13  from the deemed admissions pursuant to Federal Rule of Civil Procedure 36(b).  (Def.'s Opp'n

14  at 7-8; A. Torres Decl., Ex. 5.)

15          With respect to requests for admission, Federal Rule of Civil Procedure 36(a)(3)

16  provides, in part, that "[a] matter is admitted unless, within 30 days after being served, the party

17  to whom the request is directed serves on the requesting party a written answer or objection

18  addressed to the matter."  Rule 36(b) further provides that "[a] matter admitted under this rule is

19  conclusively established unless the court, on motion, permits the admission to be withdrawn or

20  amended."  Fed. R. Civ. P. 36(b).  Whether such relief is appropriate is governed by a two-

21  pronged test: a "court may permit withdrawal or amendment if it would [1] promote the

22  presentation of the merits of the action and [2] if the court is not persuaded that it would

23  prejudice the requesting party in maintaining or defending the action on the merits."  Id.

24          Rule 36(b) presents a permissive standard, and whether a party is entitled to relief

25  in the form of withdrawal or amendment of responses to requests for admissions lies within the

26  ////

discretion of the district court.[7]  Conlon, 474 F.3d at 621.  However, "[t]he rule permits the

district court to exercise its discretion to grant relief from an admission made under Rule 36(a)

only when (1) the presentation of the merits of the action will be subserved, and (2) the party

who obtained the admission fails to satisfy the court that withdrawal or amendment will

prejudice that party in maintaining the action or defense on the merits."  Id. (citations and

quotation marks omitted).  "The party relying on the deemed admission has the burden of

proving prejudice."  Id. at 622.  These two factors are "central" to the analysis, and a district

court's failure to consider the two components of Rule 36(b) identified above constitutes an

abuse of discretion.[8]  Id. at 625.  A district court may also "consider other factors, including

whether the moving party can show good cause for the delay and whether the moving party

appears to have a strong case on the merits."  Id.

    Here, as to the first factor to be considered, the presentation of the merits of the

action would be subserved if the admissions were left to stand.  As noted above, review of

plaintiff's requests for admission reveal that defendant has admitted his liability by failing to

---

  [7]  The Ninth Circuit Court of Appeals has advised district courts "to be cautious in exercising their discretion to permit withdrawal or amendment of an admission."  999 v. C.I.T. Corp., 776 F.2d 866, 869 (9th Cir. 1985).  This seems an appropriate admonition in cases such as C.I.T. Corp., where the defendant moved to withdraw an admission in the middle of trial.  See id. ("Once trial begins, a more restrictive standard is to be applied in permitting a party to withdraw or amend an admission.").

  [8]  In Conlon, the Ninth Circuit Court of Appeals summarized the purposes and policies that animate Rule 36 and the requirement that a district court consider both prongs of the test before granting or denying relief in the form of amendment or withdrawal of responses:

> Admissions are sought, first, to facilitate proof with respect to issues that cannot be eliminated from the case and, second, to narrow the issues by eliminating those that can be.  The rule is not to be used in an effort to "harass the other side" or in the hope that a party's adversary will simply concede essential elements.  Rather, the rule seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice.  Thus, a district court must specifically consider both factors under the rule before deciding a motion to withdraw or amend admissions.

474 F.3d at 622 (citations and quotation marks omitted).

1    answer plaintiff's requests for admission.  Although plaintiff argues that defendant has the

2    burden to satisfy the prong, plaintiff has not persuasively countered the finding that the deemed

3    admissions are conclusive of defendant's liability.

4            Additionally, as to the second relevant factor, plaintiff has not met its burden to

5    demonstrate that withdrawal or amendment would prejudice plaintiff in maintaining the action on

6    the merits.  The undersigned concludes that plaintiff would not be prejudiced *at trial* if the

7    admissions were withdrawn.  In regards to prejudice, "district courts should focus on the

8    prejudice that the nonmoving party would suffer at trial."  Conlon, 474 F.3d at 624.  In Hadley v.

9    United States, 45 F.3d 1345 (9th Cir. 1995), the Ninth Circuit Court of Appeals explained that

10   "[t]he prejudice contemplated by Rule 36(b) is not simply that the party who obtained the

11   admission will now have to convince the factfinder of its truth.  Rather, it relates to the difficulty

12   a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because

13   of the sudden need to obtain evidence with respect to the questions previously deemed admitted."

14   Id. at 1348 (citation and quotation marks omitted).  Nothing in the record suggests that plaintiff

15   would suffer such prejudice at trial.

16           Plaintiff argues, in reliance on Conlon v. United States, 474 F.3d 616, that it

17   suffered prejudice essentially because it relied on the deemed admissions in choosing not to

18   conduct additional discovery and relied on defendant's admissions in preparing its motion for

19   partial summary judgment.  However, in Conlon, the Ninth Circuit Court of Appeals concluded

20   that "reliance on a deemed admission in preparing a summary judgment motion does not

21   constitute prejudice," and was "reluctant to conclude that a lack of discovery, without more,

22   constitutes prejudice" where the court could reopen discovery.  See id. at 624.  Instead, Conlon

23   largely turned on the fact that the district court rendered its decision denying relief from the

24   deemed admissions only eight days before trial.  Here, however, trial is several months away, and

25   the court can reasonably continue the dates in this case to permit plaintiff to conduct additional

26   discovery that it refrained from conducting in reliance on the admissions.  Accordingly, the

1  undersigned is unpersuaded by plaintiff's reliance on Conlon.

2        Based on the foregoing, and despite defendant's reprehensible conduct, the

3  undersigned exercises its discretion under Rule 36(b) and grants defendant's request for relief

4  from the deemed admissions.  Ordinarily, the court would simply order that the proposed

5  responses to the requests for admission attached as attached as Exhibit 5 to defendant's

6  declaration serve as defendant's amended responses.  However, in light of defendant's prior

7  misrepresentation, the undersigned granted defendant one additional day to review and revise his

8  proposed responses prior to service, to ensure that defendant does not introduce additional

9  misrepresentations into the record.  Accordingly, the court ordered defendant to serve his

10  amended responses on plaintiff no later than March 2, 2012.

11  III.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

12        Plaintiff argues that "[i]f this Court were to find that the Requests for Admission

13  are insufficient to establish liability, the Court may still grant summary judgment based on the

14  evidence." (Pl.'s Memo. at 9.)  Plaintiff relies on the affidavit of Joseph M. Gagliardi to

15  establish plaintiff's exclusive rights to commercially broadcast the Program, and relies on the

16  affidavit of its investigator, Jessica Haverty, to establish that the Program was broadcast at the

17  Cavour Club on November 14, 2009.  Defendant focuses his attack on Haverty's affidavit and

18  credibility.  As discussed below, defendant has raised a genuine dispute of fact that precludes the

19  grant of summary judgment as to plaintiff's federal signal piracy claims and state law claim of

20  conversion.

21      A.    Standards Governing Motions for Partial Summary Judgment

22        Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for

23  summary judgment, identifying each claim or defense--or the part of each claim or defense--on

24  which summary judgment is sought."  It further provides that "[t]he court shall grant summary

25  judgment if the movant shows that there is no genuine dispute as to any material fact and the

26

1  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[9]  A shifting burden of

2  proof governs motions for summary judgment under Rule 56.  Nursing Home Pension Fund,

3  Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).

4  Under summary judgment practice, the moving party

5              always bears the initial responsibility of informing the district court
              of the basis for its motion, and identifying those portions of "the
6              pleadings, depositions, answers to interrogatories, and admissions
              on file, together with the affidavits, if any," which it believes
7              demonstrate the absence of a genuine issue of material fact.

8  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).

9  "Where the non-moving party bears the burden of proof at trial, the moving party need only

10 prove that there is an absence of evidence to support the non-moving party's case."  In re Oracle

11 Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ.

12 P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not

13 have the trial burden of production may rely on a showing that a party who does have the trial

14 burden cannot produce admissible evidence to carry its burden as to the fact").

15         If the moving party meets its initial responsibility, the opposing party must

16 establish that a genuine dispute as to any material fact actually exists.  See Matsushita Elec.

17 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary

18 judgment, the opposing party must demonstrate the existence of a factual dispute that is both

19 material, i.e., it affects the outcome of the claim under the governing law, see Anderson v.

20 Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores

21 Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such

22 that a reasonable jury could return a verdict for the nonmoving party,'"  FreecycleSunnyvale v.

23 Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A

24 _____

25      [9]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
   2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56,
26 "[t]he standard for granting summary judgment remains unchanged."

1  party opposing summary judgment must support the assertion that a genuine dispute of material

2  fact exists by: "(A) citing to particular parts of materials in the record, including depositions,

3  documents, electronically stored information, affidavits or declarations, stipulations . . . ,

4  admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

5  not establish the absence or presence of a genuine dispute, or that an adverse party cannot

6  produce admissible evidence to support the fact."[10]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

7  the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

8  Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

9          In resolving a motion for summary judgment, the evidence of the opposing party

10 is to be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may

11 be drawn from the facts placed before the court must be viewed in a light most favorable to the

12 opposing party.  See Matsushita, 475 U.S. at 587; In re Oracle Corp. Sec. Litig., 627 F.3d at 387.

13 However, to demonstrate a genuine factual dispute, the opposing party "must do more than

14 simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

15 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

16 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

17      B.    Plaintiff's Signal Piracy Claims, 47 U.S.C. §§ 553(a), 605(a)

18          Plaintiff alleges claims under two federal statutes that permit a party aggrieved by

19 signal piracy to bring a civil action: 47 U.S.C. § 553(a) and 47 U.S.C. § 605(a).[11]  The Federal

20 Communications Act, 47 U.S.C. §§ 605 et seq., prohibits, among other things, commercial

21

22 [10]  "The court need consider only the cited materials, but may consider other materials in the
   record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support
   or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ.
23 P. 56(c)(2).

24 [11]  As provided in 47 U.S.C. § 553(c)(1), "[a]ny person aggrieved by any violation of
   subsection (a)(1) of this section may bring a civil action in a United States district court or in any
25 other court of competent jurisdiction."  As provided in 47 U.S.C. § 605(e)(3)(A), "[a]ny person
   aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may
26 bring a civil action in a United States district court or in any other court of competent jurisdiction."

1  establishments from intercepting and broadcasting radio communications to its patrons.  See 47

2  U.S.C. § 605(a).  In relevant part, 47 U.S.C. § 605(a) states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.  No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

11  The Ninth Circuit Court of Appeals has determined that satellite television signals are covered

12  communications under 47 U.S.C. § 605(a).  DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th

13  Cir. 2008).

14      The scope of 47 U.S.C. § 605(a) is less clear with respect to transmissions

15  intercepted from a cable system, which are expressly covered under 47 U.S.C. § 553(a).

16  Section 553(a) states, in relevant part:  "No person shall intercept or receive or assist in

17  intercepting or receiving any communications service offered over a cable system, unless

18  specifically authorized to do so by a cable operator or as may otherwise be specifically authorized

19  by law."  47 U.S.C. § 553(a)(1).

20      A split of authority has developed regarding the scope of section 605(a) in that

21  numerous courts have concluded that section 605(a) applies exclusively to broadcasts obtained

22  by way of a satellite television signal, as opposed to transmissions over a cable system, and that

23  section 553 applies exclusively to transmission over a cable system.  Compare United States v.

24  Norris, 88 F.3d 462, 466-69 (7th Cir. 1996) (holding that sections 553(a) and 605(a) are not

25  "overlapping statutes" and are thus mutually exclusive), with Int'l Cablevision, Inc. v. Sykes, 75

26  F.3d 123, 132-33 (2d Cir. 1996) (holding that section 605 and section 553 are not completely

1   overlapping); see also TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 204-07 (3d Cir. 2001)

2   (recognizing the disagreement between the holdings in Norris and Sykes, and holding "that § 605

3   encompasses the interception of satellite transmissions to the extent reception or interception

4   occurs prior to or not in connection with, distribution of the service over a cable system, and no

5   more" (internal quotation marks omitted).); J & J Sports Prods., Inc. v. Delgado, No. CIV. 2:10-

6   2517 WBS KJN, 2012 WL 371630, at *3 (E.D. Cal. Feb. 3, 2012) (unpublished) ("'A signal

7   pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a

8   satellite broadcast. But he cannot violate both by a single act of interception.'") (quoting J & J

9   Sports Prods., Inc. v. Manzano, No. C-08-01872, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29,

10   2008) (unpublished)).

11         The court need not resolve the split of authority because plaintiff's motion for

12   partial summary judgment is fundamentally defective. There are several problems with

13   plaintiff's motion as it pertains to plaintiff's signal privacy claims. First, plaintiff has not alleged

14   or demonstrated through evidence whether the transmission that defendant allegedly intercepted

15   was by means of a cable system or a satellite television signal. Plaintiff points to no evidence

16   supporting any particular means of transmission. Plaintiff appears to assume it has established

17   liability under either or both statutes so long as its investigator viewed the Program at the Cavour

18   Club on November 14, 2009. However, plaintiff is the moving party and has the ultimate burden

19   at trial to demonstrate unlawful transmission by a means addressed by one or both statutes.

20   Without more from plaintiff, the court cannot conclude that plaintiff is entitled to judgment as a

21   matter of law under a particular signal piracy statute. For this reason alone, plaintiff has not met

22   its initial burden in moving for summary judgment.

23         Furthermore, defendant has raised a genuine dispute of material fact as to whether

24   defendant actually intercepted any transmission of the Program, regardless of the means of

25   transmission. Defendant attacks the representations in Haverty's affidavit, which is plaintiff's

26   only evidence suggesting that defendant intercepted and broadcast the Program.

1        Plaintiff's investigator, Jessica Haverty, swears that on November 14, 2009, at

2   7:40 p.m., she entered the Cavour Club after paying a $5.00 cover charge.  (Havery Aff. at 1,

3   Dkt. No. 33, Doc. No. 33-5.)  She represents that she was immediately followed by a bouncer

4   "described as a Hispanic male aged 35-40, standing approximately 5'8", and weighing 190 lbs."

5   with black hair.  (Id.)  Haverty states that the bouncer asked her a number of questions, left her

6   for five minutes, and then came back to her, grabbing her by the arm, returning her cover charge,

7   and escorting her out of the club.  (Id.)  She further states that at 7:42 p.m., she observed the

8   unauthorized broadcast of a portion of the Program on three televisions located inside the

9   establishment.  (Id.)  She does not identify the portion of the specific fight she observed.  Instead,

10  she relates that "there was 2:45 left in round 2," and that an "HBO/PPV insignia" appeared in the

11  bottom right hand corner of the television.  (Id.)  She avers that she observed two fighters in the

12  ring, and that "one of the fighters was wearing red and white shorts, the other fighter was wearing

13  red shorts with the word, "TECATE" across the waistband."  (Id.)  Haverty asserts that she left

14  the Cavour Club at about "7:74 [sic] p.m."  (Id. (emphasis added).)

15       Although defendant attempts to contradict Haverty's declaration in myriad

16  respects, the following evidence is sufficient to raise triable questions about the credibility of

17  Haverty's affidavit and to create a genuine dispute of material fact regarding whether defendant

18  actually intercepted and broadcast the Program at all.  First, defendant's bouncer, Paul K. Torres,

19  who worked at the Cavour Club on the night in question, swears under penalty of perjury that the

20  Program was never exhibited at the Cavour Club on November 14, 2009.  (Paul K. Torres Aff.

21  ¶ 3.)  Defendant's revised answers to plaintiff's requests for admission are largely in accord, but

22  are ambiguous in several respects.  Notably, defendant objects to several of the requests on the

23  grounds that "such request for admission would raise issues relative to the 5th Amendment of the

24  United States Constitution and similar provisions of the California Constitution of California."

25  (See A. Torres Decl., Ex. 5.)  Nevertheless, Paul Torres's representation is unequivocal and

26  sworn in an affidavit.

1    Second, Paul Torres represents that the Cavour Club "does not count [*sic*] with

2    any satellite provider (i.e., Cable Company, Dish Network, DirecTV) that could be [*sic*]

3    contribute to the broadcast and exhibition of the Event on November 14, 2009." (Paul K. Torres

4    Aff. ¶ 4.)  Again, defendant's revised responses to the requests for admission are ambiguous and

5    assert protections of the Fifth Amendment.  Nevertheless, plaintiff has not produced evidence

6    that defendant used a signal decoder or other device to intercept the transmission of the Program.

7    Third, Paul Torres represents that "the operations hours of the establishment

8    Cavour Club are 8:30 P.m. [*sic*] to 1:45 Am [*sic*] and the hours that [he] worked that night of

9    November 14, 2009 was 9:00 pm and closed gates at 2:00 am on November 15, 20009 [*sic*]."

10   (Paul K. Torres Aff. ¶ 5.)  Similarly, defendant represents that the Cavour Club normally opens

11   between "8:30 - 9:00 p.m.," and that, as a result, Haverty could not have been in the

12   establishment at approximately 7:40 p.m.  (<u>See</u> A. Torres Decl at 2.)[12]

13   Finally, defendant also disputes some of Haverty's descriptions of what she

14   observed while inside the Cavour Club on the night in question.  For example, defendant asserts

15   that his bouncer is bald, whereas Haverty described the bouncer as having short black hair.

16   (<u>Compare</u> Haverty Aff. at 1, <u>with</u> A. Torres Decl. at 2.)  Additionally, defendant asserts that

17   whereas Haverty described the establishment as having three televisions, the Cavour Club "has

18   one televisions [*sic*] and one (1) monitor/projector that do not match the description give [*sic*] in

19   Affidavit by Private Investigator Statement." (<u>Compare</u> Haverty Aff. at 1, <u>with</u> A. Torres Decl.

20   at 2.)

21   At bottom, the representations of defendant and Paul Torres might ultimately be

22   found not credible, and Haverty's affidavit might be vindicated.  However, such determinations

23

24       [12]  Some of the representations in Armando Torres's declaration appear after the following
representation: "I declare under penalty of perjury pursuant to the laws of the State of California and
25   the United States that *foregoing* is true and correct."  (A. Torres Decl. at 2 (emphasis added).)  It
does not appear, however, that defendant intended to exclude the representations appearing after this
26   statement from his declaration under penalty of perjury.

15

1  are for the ultimate trier of fact to make.  The undersigned may not make such determinations,

2  which turn on the weighing of evidence and credibility, in the context of a motion for summary

3  judgment.  Without more than the scant evidence provided by plaintiff, plaintiff has not

4  established the means of transmission that was allegedly intercepted, and defendant has raised a

5  genuine dispute of material fact regarding whether he or anyone else at the Cavour Club actually

6  intercepted and unlawfully broadcast the Program on November 14, 2009.  Accordingly, the

7  undersigned recommends that plaintiff's motion for partial summary judgment be denied without

8  prejudice as to plaintiff's signal piracy claims.

9         C.     <u>Plaintiff's Conversion Claim</u>

10         The undersigned need only briefly address whether plaintiff is entitled to summary

11  judgment on its claim for conversion under California law.  In short, the court should deny

12  plaintiff's motion as to the claim of conversion under California law for largely the same reasons

13  that preclude summary judgment on the piracy claims.

14         Under California law, the tort of conversion consists of "the wrongful exercise of

15  dominion over the property of another."  <u>See</u>, <u>e.g.</u>, <u>Hernandez v. Lopez</u>, 180 Cal. App. 4th 932,

16  939, 103 Cal. Rptr. 3d 376, 381 (Ct. App. 2009) (citation and quotation marks omitted).  "The

17  elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the

18  property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and

19  (3) damages."  <u>Id.</u> (citation and quotation marks omitted); <u>accord</u> <u>G.S. Rasmussen & Assocs.,</u>

20  <u>Inc. v. Klitta Flying Serv., Inc.</u>, 958 F.2d 896, 906 (9th Cir. 1992); <u>Gilman v. Dalby</u>, 176 Cal.

21  App. 4th 606, 615 n.1, 98 Cal. Rptr. 3d 231, 239 n.1 (Ct. App. 2009).

22         Here, assuming that an interest in intangible property such as an exclusive license

23  to distribute a broadcast signal is the proper subject of a claim of conversion under California tort

24  law, plaintiff has not established that it is entitled to summary judgment as to such a claim.

25  Although plaintiff established that it owned the exclusive commercial distribution rights at issue,

26  it has not established as a matter of law that defendant converted the broadcast signal or that

16

plaintiff suffered damages.  As with plaintiff's federal signal piracy claims, there remains a genuine dispute of material fact as to whether defendant intercepted the broadcast of the Program.  Accordingly, plaintiff is not entitled to summary judgment on its conversion claim, and the undersigned recommends that plaintiff's motion be denied.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.     Defendant's request for relief from his deemed admissions pursuant to Federal Rule of Civil Procedure 36(b) is granted, and defendant's admissions are set aside.

2.     As ordered at the hearing, defendant shall serve amended responses to plaintiff's requests for admissions on plaintiff no later than March 2, 2012.

3.     The court's Status (Pretrial Scheduling) Order is modified so that both parties may conduct additional non-expert discovery in light of defendant's revised discovery responses.  As a result, the Status (Pretrial Scheduling) Order is modified as follows:

a.     All non-expert discovery shall be "completed," as that term is defined in the Status (Pretrial Scheduling) Order, by **May 18, 2012**.

b.     All law and motion, except as to discovery-related matters, shall be "completed," as that term is defined in the Status (Pretrial Scheduling) Order, by **July 19, 2012**.

c.     The final pretrial conference before United States District Judge Kimberly J. Mueller shall be held on **September 20, 2012**, at 3:30 p.m., in Courtroom No. 3.

d.     The bench trial in this case shall commence before Judge Mueller on **October 29, 2012**, at 1:30 p.m., in Courtroom No. 3.

It is FURTHER RECOMMENDED that plaintiff's motion for partial summary judgment (Dkt. No. 33) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written

1    objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

2    Such a document should be captioned "Objections to Magistrate Judge's Findings and

3    Recommendations."  Any response to the objections shall be filed with the court and served on

4    all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

5    Failure to file objections within the specified time may waive the right to appeal the District

6    Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

7    1153, 1156-57 (9th Cir. 1991).

8                IT IS SO ORDERED and RECOMMENDED.

9    DATED:  March 5, 2012

10

11

12                KENDALL J. NEWMAN
                UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26